Next matter on our calendar is Gentles versus the Commissioner of Social Security. Good morning, your honors. My name is Mark Schneider. I represent Lori Gentles. In this case, if you look at the evidence on the record from both sides and weigh it, no person with a reasonable mind could believe that Lori could do any work on a full-time sustained basis. Therefore, there is no substantial evidence supporting the ALJ's decision. The social this court has held many times that the Social Security Act is to be liberally construed to effectuate its remedial purpose. And recently the Supreme Court and Smith noted that this the Social Security Act is unusually protective of claimants. And in addition, the ALJ violated the treating physician rule and did not correctly evaluate Lori's credibility. The treating physician, Dr. Eustace is a board-certified family medicine practitioner. She treated Lori for physical and mental illnesses for over four years. The ALJ egregiously erred in not crediting Dr. Eustace's opinion that Lori would miss about three days a month of work because of her limitations. Her opinion that pain will distract Lori from adequately performing work that Lori would abandon tasks because of pain and she has side effects from medications that will severely limit her effectiveness at work. That there is not a scintilla of evidence to oppose that the medical records show a long history of leg and back pain and knee pain and neuropathy in her legs. There are no inconsistencies in the record between what Dr. Eustace opined and the rest of the record and Dr. Eustace was not overly generous. She did say my client could sit for six hours a day. The only basis the ALJ gave for not giving great weight to Dr. Eustace was that the claimants own reported activities tend to lessen the persuasiveness of Dr. Eustace's limitations. And the ALJ erred by not crediting Lori's testimony about her daily activities. He said he found she was credible in what she could do and one couldn't do but then discredited her testimony about her limitations. Was she too honest? Is that what you're saying? I'm not saying she was too honest. I'm saying that she was honest in everything that she said. Her testimony about pain and limitations is fully supported by the clinical and none of the doctors or sources felt that she was not credible. He discredited her for undertaking daily activities of caring for her family and Lori gamely endures pain to care for her severely handicapped children. She honestly testified, incredibly testified. She does do daily activities with great difficulty when she can and that it takes her a long time to do household chores. She's tired most of the time. The ALJ relied on non-substantial evidence to reject her credibility and he cherry-picked this non-substantial evidence similarly to the cases in Balsamo and Janir. He certainly didn't provide sufficient explanation for his conclusion. She was not credible. And also at step two, the ALJ erred and not considering her IQ of 67. He erred by not considering her right knee impairment that causes her to fall. He did not consider her diabetic neuropathy that causes numbness and causes her to fall. And in addition, he ignored her deep vein thrombosis and headaches. What was different that allowed her to receive SSDI in her second application? Was it the same evidence? Essentially, yeah, the same limitations and the same impairments that were before the second ALJ were before this ALJ. The difference is that the second ALJ did correctly credit and give weight to the take into account what happened in a later time as to an earlier one. Can we? Well, the next day, you know, I would say judge that it's not it's not determinative, but you should consider that standing alone. The second decision wouldn't make a difference. But here you can see that based on the exact impairments and limitations. She was found to be disabled because that second judge correctly gave weight to the treating physician and correctly credited my client's testimony. And in this case, my client was super morbidly obese. She had over 50 BMI and the judges said, well, that she can work anyway. Thank you. Thank you, counsel. You've reserved two minutes for rebuttal. We'll hear from the commissioner of Social Security. Good morning, your honors. May it please the court. Substantial evidence of record supports the commissioner's final decision that the appellant was not disabled during the relevant period. Consistent with the commissioner's regulations, the ALJ properly evaluated the severity of the appellant's impairments at step two and throughout the sequential evaluation and when determining the appellant's RFC, which was appropriately based on the opinion of Dr. Eustis, the appellant's treating physician, the consultative examiner, the psychologist and state agency review psychologist. Counsel, what medical evidence did the ALJ have for not giving full weight to Dr. Eustis? What medical evidence did we have? The ALJ did not give credence to most of Dr. Eustis's opinion. The ALJ said that it was not given full weight and the question remains, what medical evidence? Normally, when that happens with respect to a treating physician, it is either because there are medical tests that are contrary or medical evidence to the contrary. And what I don't see in this case, which is quite unusual, is that the ALJ relied on any medical evidence on that. And that sounds like the ALJ making its own medical decision, which is something that the ALJ cannot do. Your Honor, the ALJ relied on the mostly unremarkable clinical findings in this case, coupled with the appellant's extensive activities of daily living, which the ALJ noted throughout his decision. I understand what the ALJ chose to believe some of what the appellant said and chose not to believe some of the other, which is rather interesting in itself. But that is to the side of my point. Even if that was a correct statement, and even if what the appellant said might be to some extent contrary to what the ALJ, to what Dr. Eustis found. I keep asking, what medical evidence did the ALJ rely on for its conclusion that the treating physician was not to be given full weight? That's what it said. I mean, I didn't say that he did. You say he relied on the treating physician. The ALJ said, no, that I don't give it full weight. The ALJ relied on the portions of the treating physician's opinion consistent with the exertional limitations, her ability to sit, stand, walk, lift, and carry. The ALJ relied on. They were all consistent with the overall record. And that is what Dr. things that the treating physician said. I mean, he said that he was not giving full weight to it. And what I'm asking, because our job is just to see if there's an error. Our job isn't to second guess. Our job is just to see if there's an error. And I want to know what medical evidence was there that justified the ALJ in not giving full weight to the treating physician. Usually, we have other doctors who counter them. We have medical tests that counter the treating physician. And then, of course, the ALJ is perfectly, properly able to discount. But what I want to know is what there was here. Here, Your Honor, the ALJ relied on Dr. Huston's, the portions of her opinion that were consistent. He wanted, the ALJ wanted to rely on, but that's not the answer. Well, Your Honor, he relied on also the clinical objective findings of record, which were mostly unremarkable. And while at times the appellant had an antalgic gait, she never used an assistive device. She had full to near full ranges of motion. She had full muscle strength. And the ALJ, the portions of Dr. Huston's, where does that come from? It's throughout the record. It's throughout 13F. Who says this? What Dr. Dr. Huston's, excuse me. In other words, we're back to saying that the ALJ cherry picked Dr. Huston's and picked those things out of Dr. Huston's that the ALJ wanted to follow and ignored the full thrust of the treating physician. And what I want to know is how it was justified in doing that when we have said again and again and again, that the treating physician must be given full weight unless there is medical testimony to the contrary, medical tests, et cetera, et cetera. Your Honor, the ALJ acknowledged that the exertional postural and environmental restrictions within the record were reflected in her history of having a significant abnormal gait, reduced spinal motions, and her previous right knee surgery. The ALJ took those pieces of evidence into account and noted that she had ongoing significant lumbar spondylosis with radicular component, noting that all this evidence was also included in Dr. Huston's opinion. I'm sorry, excuse me, in her treatment records. And the ALJ acknowledged that clinically, the evidence certainly substantiates the claimant's problems associated with standing, walking, lifting, and carrying. However, consideration must also be provided to the claimant, here the appellant's, own reported activities. Why is that medical testimony? The treating physician knew that, the treating physician had that before it, the treating physician reaches a conclusion. If another physician reaches a different conclusion, there is medical testimony to the contrary. But here, I don't see any medical testimony that allows the ALJ to pick and choose among what Dr. Eustace concluded upon seeing this person who Dr. Eustace had been treating for years, including a full report of what the person did. Your Honor, with all due respect, the ALJ did not cherry pick Dr. Eustace's opinion. The ALJ noted that the activities of daily living and the appellant's daily abilities were also corroborated within Dr. Eustace's opinion, which allowed the ALJ to then give some weight to portions of her opinion and not to the portions of the opinion that weren't consistent with the overall record, such as taking care of her two children who the appellant herself indicated she took care of as a single mother and her two children have disabilities. And this alone suggests that the extra time and attendance it took to care for the kids undermines the portion of Dr. Eustace's opinion where she indicated that the appellant would have disabling levels of pain. The record also indicates within Dr. Eustace's treatment notes that tramadol controlled the appellant's back pain. It controls it for the time being. She had been on many other drugs and at some point they stopped working. Isn't that correct? Throughout the relevant record, she did indicate that one medication helped more than the other. And so Dr. Eustace would discontinue the medication and continue her with another medication. But throughout, the appellant did say that the treatments were working for her and that her pain was controlled. Even one month before Dr. Eustace issued her opinion. Dr. Eustace noticed in her treatment notes that the appellant told her that her back pain was controlled with tramadol and that she was coping well with her back pain. And at one point she reported that her pain levels was reduced to zero out of ten. So while her medication changed, she did find medication that helped her to alleviate her pain. Counsel, what's a polisher? A polisher? A polisher? Are there any jobs that she might be able to take? I don't know. Are there any in the area where she lives? What is a polisher? According to the... What is a polisher polish? According to the Dictionary of Occupational Titles, Your Honor, a polisher polishes plastic eyeglass frames and temple pieces to remove scratches and pit marks using a polishing wheel. And to go back to Your Honor's question about are there any jobs in her immediate area, under the Act, the jobs have to exist within the national economy. I know that. I know that. Thank you, Counsel. Thank you. Mr. Schneider, retain two minutes for rebuttal. Counsel? We can't hear you. Turn on your sound. Sorry. Yeah, I learned how to mute it, but not unmute it as quickly, so testing my reflexes here. You have to look at the record longitudinally, which is what Dr. Eustace did. And if the judge, if the ALJ didn't want to credit her, your opinions about my client's ability to go to work every day, to be in pain, he could have asked, if he didn't think that her own records supported that opinion, he could have asked her to clarify that, and that is required by the treating physician rule. And he didn't do that. My client not only had an intagic gait, everybody acknowledged her pain. She needed injections from a pain specialist. She wore a back brace. She took many different medications, and there were times her pain got better, but there were many times she was in great pain. She testified about her fatigue. The MRI and EMG clinically and radiologically supported her limitations. I believe that the ALJ not only violated the treating physician rule, but that the district court incorrectly applied the substantial evidence rule in this case. Thank you. Thank you. Thank you both. We'll reserve decision.